REGAN, Judge.
Plaintiff, James H. Kostmayer, doing business as Kostmayer Mortgage Company, instituted this suit against defendant, Schwegmann Bros. Giant Super Markets, Inc. endeavoring to recover the sum of $2,000 representing a commission of 1% of $200,000, the amount of a loan secured by plaintiff on behalf of defendant.
Defendant answered denying that it was indebted unto plaintiff in any sum whatsoever for the reason that it did not refuse to accept this loan.
From a judgment in favor of the plaintiff as prayed for defendant prosecutes this appeal.
The record reflects that defendant had contracted for the erection of a building in the vicinity of the Airline Highway and Labarre Road and had secured interim financing therefor from the Progressive Bank & Trust Company. The completion of the building was anticipated in the latter part of 1950 and long-term financing in the amount of about $200,000, through the medium of an insurance company was contemplated at that time.
In preparation therefor defendant secured the services of plaintiff and agreed that if plaintiff should procure a loan of $200,000 for defendant and defendant should refuse to consummate the same, it would pay plaintiff a commission of 1% or $2,000.
In March of 1950, defendant signed an application requesting a loan of $275,000 from the Great Southern Life Insurance Company of Houston, Texas, and designated plaintiff therein as defendant’s agent.
On May 17, 1950, the insurance company agreed to loan defendant the sum of $200,-000 and would accept as security therefor a mortgage on defendant’s property and the assignment of $100,000 of life insurance from the officers of the defendant. Relative to the assignment of life insurance the contract or “letter of loan commitment” especially provided:
“We are to be furnished the assignment of $100,000.00 of life insurance as additional collateral. We understand that the three partners now carry about $20,000. life insurance, which means they must take out about $80,-000.00 which we will require placed with the Great Southern Life Insurance Company.
“It is understood and agreed that we will not be called upon to pay out any money until the new building is completed according to plans and specifications * *
In conformity with the foregoing requirement John Schwegmann, Jr. and Paul Schwegmann, President and Vice President respectively of defendant, executed applications for life insurance with the Great Southern Life Insurance Company. Two policies, each for $50,000 dated July . 15, 1950, were issued to the applicants.
On November 29, 1950," defendant’s attorney wrote B. C. Heebe, attorney and notary before whom the loan was to be executed “I ’ would appreciate it if you would arrange to fix the act of mortgage for passage at a very early date.”
On December 12, 1950, Great Southern Life Insurance Company mailed to B. C. Heebe, Federal Reserve Exchange in the sum of $200,000 payable to Schwegmann Bros, and B. C. Heebe, to be disbursed in conformity with their letter of commitment.
The date of December 18, 1950, was fixed for passage of the act of mortgage and defendant’s officers visited the office of Heebe for the purpose of consummating the loan. A discussion arose and subsequently a conflict over the assignment of $100,000 of life insurance by the Schweg-manns to the Great Southern Life Insurance Company. The Schwegmanns insisted that they did not initially agree to maintain $100,000 of life insurance throughout the term of the loan and, therefore, the assignment of the life insurance exceeded the requirements contained in the *352 letter of commitment in that it made “no provision for a reduction of the life insurance as the loan was repaid.” The Schwegmanns requested Heebe to write the insurance company for permission to add to the assignment such a provision. The insurance company refused to modify the insurance assignment and in doing so observed:
“If at some future date after these people have reduced the loan to an amount where they think they are entitled to a reduction in the insurance requirement and they care to make such a request, our committee will be glad to give the matter due consideration.”
The matter remained in this status from December 18, 1950, until January 12, 1951, at which time the insurance company telephoned John Schwegmann, Jr., and when informed that the defendant did not intend to consummate the loan, the defendant was advised that the company would advise Heebe to return the check for $200,000 to it and, on the same day they notified plaintiff in writing thereof and added “we could not permit a check of this size to remain outstanding for an indefinite period, particularly as there seemed to he no hope of closing the loan.”
On January 22, 1951, plaintiff wrote to defendant, a letter which reads in part as follows:
“ * * * this office entered into an agreement with you relative to the mortgage loan which we negotiated for your account with the Great Southern Life Insurance Company of Houston, Texas. This agreement provided in the event you decided not to use this loan you would pay this office our brokerage fee in the amount of 1% or $2,000.00.
“We have discussed this matter with your attorney, Mr. John Charbonnet, * * * and at his suggestion we are addressing you to determine whether or not it is your desire to close out the loan or to pay us the brokerage fee * * *. We would like to know whether or not any provision has been made to reimburse Mr. B. C. Heebe, closing attorney, for those expenses incurred by him to date.
“Your advice within the next ten days will be appreciated.”
On or about February 1, 1951, defendant’s attorney contacted Heebe and informed him that defendant “agreed to accept the loan on the terms demanded by the Great Southern.”
On February 3, 1951, Heebe wrote the insurance company informing them that defendant was prepared to close the loan “as per the commitment.” On February 6, 1951, the insurance company advised Heebe “that our file in this case has been closed and we are not able to reconsider the loan.”
Heebe, on behalf of plaintiff, then made demand upon defendant for a brokerage fee in the amount of $2,000 which defendant refused to pay on the theory that it did not refuse to accept the loan. Hence this litigation.
Defendant concedes that it employed plaintiff to obtain the loan and that if it refused to consummate the same, it would pay plaintiff a commission of 1% or $2,-000, however, defendant insists that it did not agree with Great Southern Life Insurance Company to maintain $100,000 of life insurance during the whole term of the loan and, finally, that within the ten-day period set forth in plaintiff’s letter to defendant, dated January 22, 1951 (quoted hereinabove) “ * * * defendant agreed to accept the loan on the terms demanded by the Great Southern * *
A careful analysis of the defense interposed to this action for a brokerage fee discloses that it is without merit. Defendant concedes that the letter of loan commitment dated May 17, 1950, was the basis of its agreement to accept the loan of $200,000 and a casual reading thereof will reveal that there is not one word contained therein which would have caused defendant *353 to believe that the $100,000 of life insurance required as collateral insurance would be reduced as the loan was repaid. Therefore, defendant’s refusal to accept the loan unless the life insurance assignment to the Great Southern Life Insurance Company was modified was unwarranted.
The second defense interposed to this suit, in our opinion, is also without merit. Defendant concedes that it refused to execute the act of mortgage and other collateral securing the loan on the date agreed upon — December 18, 1950, and that it made no effort to reconsider its position at least through the date of January 12, 1951, at which time Heebe was instructed by the Great Southern Life Insurance Company to return the check for $200,000. On this date both plaintiff and defendant were notified by the insurance company of this action. Despite these facts defendant contends, which contention anpears to be an afterthought, that plaintiff’s letter addressed to it under date of January 22, 1951, granted defendant an additional ten days in which to accept or reject the loan and that within this period of time defendant accepted the loan on the Great Southern Life Insurance Company’s terms. Assuming arguendo that plaintiff intended by this letter to grant defendant additional time in which to accept the loan, plaintiff was not possessed of such authority, a fact well known by defendant, — moreover, plaintiff was defendant’s agent by virtue of defendant having designated plaintiff as such in its written application for a loan from the Great Southern Life Insurance Company in March, 1951. M. D. Kost-mayer, Jr., representing the plaintiff, explained that it was not his purpose in writing this letter to attempt to extend the time in which defendant could accept the loan —but that the letter was intended to elucidate upon plaintiff’s claim for a commission and the expenses incurred by Heebe, the notary, in connection with the loan.
All of the parties involved in the loan transaction knew that the insurance company had, on or about January 12, 1951, withdrawn the loan because of defendant’s constant refusal to accept the loan as per the letter of commitment, therefore, plaintiff’s letter, in our opinion, did not prejudice the position which defendant then occupied so as to ultimately militate against plaintiff’s right to recover his commission of 1% from the defendant.
In our opinion the refusal of defendant to accept the loan and execute the mortgage and other collateral securing the loan was arbitrary and unwarranted; therefore, plaintiff is entitled to recover the commission as agreed upon.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.